All rise. The United States Court of Appeals for the Ninth Circuit is now in session. Good morning everyone. The cases will be called in the order listed on the docket. The first case on calendar for argument today is United States v. Harshman. Counsel for appellant, please proceed. If it pleases the court, my name is Michael Bigelow and I represent appellant petitioner Harshman. In this case, the district court, as we all theoretically know, was required to rely on sufficient evidence that the gun in question was in fact the defendant's. All apart from agent Price's involvement or any evidence that he might have offered. The judge concludes that the statement of others as well as the objective evidence found at the scene support his statement in this case, support Harshman's statements in this case. And the judge is just wrong. It was clear error. He lacked substantial evidence to support his finding. Counsel, can I ask a question up front? The Supreme Court's case in Ruiz, why doesn't that just answer the question here? I'd be interested in your view because as I read Ruiz, the Supreme Court said that withholding impeachment information cannot constitute a Brady violation in the context of a guilty plea. So doesn't that, am I misreading it or is the application not as clear as I think? I don't think it's as clear as or as succinct as you suggest because I think that the withholding of this particular evidence resulted in tremendous president prejudice. It resulted in orders that were findings of fact, at least that led to the suppression motion that led to the denial of the motion to withdraw. And there are Supreme Court cases that say that. And I think maybe even in the Brady context, but I don't have a case to that point that I can recall off the top of my head or certainly that I cited that the judge had to make findings that there was substantial evidence. Now, he pled guilty because they didn't have that evidence. And it's not just contradictory. It's not just. Well, I agree with you if he hadn't pled guilty. But I think the Supreme Court and that's why I'm asking you about Ruiz, because as I read Ruiz, it says there is no obligation to to give Brady information before a guilty plea. And so I'm wondering if there's some other hook here that makes it required in some way. If I don't read Ruiz as straightforward or as specific as you do, what is the duty in your view? What is the duty to for the government to give Brady information prior to a guilty plea? They have to give the defendant sufficient information upon which to make a reasoned choice. If this court was going to rely on Ruiz and not look at the totality of the circumstances, which even the district court judge who denied the petition, the 22-5 motion, realized, then the plea is not knowing and intelligently made. And if a plea is not knowingly and intelligently made, the defendant has been denied due process. Well, but how much information, what obligation is there to share any information before a guilty plea? How about Rule 16? Well, yeah, I know. What point does that kick in? I mean, is that is it was this guilty plea, excuse me, close enough to the trial that therefore there would have been some independent obligation to turn it over? Well, I think that there had been a I don't have the doctor in front of me, but I think that the doc, I think that it's reasonably clear that he was on his way to trial on it. The other thing is that it's important to understand that. Forgive me for lecturing the court, but it's important to understand that he never admitted to the to the gun. He pled guilty to it. Yeah, yeah, yeah. But he denied possessing the gun and he denied ownership of the gun. And he doesn't have to admit it, counsel. So let me let me ask you this question. I tend to agree with Judge Nelson's reading of Ruiz. But if we set that aside for a minute and give you for purposes of argument that there was a there was a Brady violation, something was withheld that shouldn't have been shouldn't have been. There's still other evidence that that tied your client to the gun, isn't there? His son's statement and girlfriend's statement. You know, OK, I'm glad you brought that up. That's next on my list. Those statements were prepared by guess who? Agent Price. Now, the report says and you have the report. I think it's yet. We do. OK, you've got the report. The report was prepared by price. Now, the report says that Special Agent Moore was present and Miran dies. But you know what? We don't have anything for more. We don't have a word for more. We don't have anything written from more. We don't have. What we have is evidence, again, that's presented only by price. Price is the sole purveyor of the idea that Harshman had that gun. Without price, there is nothing. The judge relies on Butterfield because he knows he doesn't have sufficient evidence. To support his findings. He knows that he goes back to the government. Two times and says, look, guys, you've responded to the 2255, but I don't have enough. Rebrief or brief me more. Brief me again. They brief him again. He still doesn't get it. The government doesn't get it. Judge doesn't get what he wants. Brief me again. And the government does. And they rehash what they've already gone over. He's still the judge still doesn't have the evidence. He said he doesn't say it, but he needs more. Where does he get that more, more, that additional evidence, that substantial evidence? He gets it from the co-defendants plea agreement. And using the co-defendants plea agreement to support his findings to support the judge's findings. It's just, again, plain wrong. I can't find a single case anywhere that says in this context, in this context, the co-defendants statement inculpating the defendant is admissible evidence. It's hearsay. It's unreliable for a lot of reasons. And. The best of which comes from the Ninth Circuit, United States, Pimentel versus Lopez at eight fifty nine, fifth, third, eleven, thirty four. Thank you very much. The Ninth Circuit has said, yeah, under some circumstances, under some circumstances, you might be able to use a co-defendants, a defendant statement. Strike that use a co-defendant statement made in a plea agreement in support of sentencing in a conspiracy case. But this gun has got nothing to do with conspiracy. It's not inculpatory to Butterfield. No one bit. And there is every reason in the world for him to simply acknowledge it. I mean, I was frankly shocked that I couldn't find a case that says you can't do it anywhere, let alone in the Ninth Circuit, or that this particular judge would rely on the co-defendant statement. Made to government authorities in a plea agreement in order to support his findings. And that's really the only thing he's got. And so I'm going to reserve the last minute and I thank you very much for your attention. And I'm sorry I disagree with you on Ruiz, but I do. And that's OK. You're not going to be the first. Thank you. You did it very politely. Justice Reinhart, Justice Reinhart once told me, once told me he said, I said, I really just don't want to disagree with the court. I forget who it was I was arguing with. And Reinhart, God love him, says, counsel, if you don't disagree with them, you're going to lose. I don't know about that. All right. We'll hear from the government. Thank you. Good morning, Your Honors, and may it please the court. Christopher Schroeder on behalf of the appellee of the United States. We're asking this court to affirm the district court's denial of the defendant's 2255 motion. The evidence in this case was not material because there is no reasonable probability that a defendant under these facts and circumstances would have rejected any plea agreement and instead gone to trial. This court. Can I ask the same question about Ruiz? Is it as bright line of a rule as I'm reading it? Because if it is that bright line of a rule that there is no obligation to disclose prior to a plea agreement or that there can never be a Brady violation prior to a plea agreement, that seems to be somewhat inconsistent with some of the Ninth Circuit law out there on this. And so I'm wondering if you can help us kind of unwind that. I think there is a compelling argument to be made to that effect, Your Honors, that Ruiz in 2002 says that the prosecution does not have a duty to disclose impeachment evidence prior to a guilty plea. Now, we have not raised that. You hesitated a little bit. You said a compelling argument. You're not totally convinced of that. You think there are some exceptions? Well, my hang up is this. We did not raise that argument in our brief, and that was a conscious choice. We obviously knew about Ruiz, and we made that choice because we thought it was important in this case to take ownership of what happened here. We did not want to rely upon that. We wanted this court to know that it could have confidence in the outcome of this verdict. Now, if we're going to talk about what Ruiz says, I think there is a compelling argument to be made to that point. If I could steelman my opponent's position here a little bit, United States v. Barton says that the Brady and its progeny apply prior to a Franks hearing. That is the case that he relies upon in his brief to say that there is such a duty to disclose. I would note that this court has not cited Barton for that point since Ruiz came out in 2002, and I think there is a compelling point to be made that Ruiz arguably overruled or is at least inconsistent with Barton. I also think that Barton is not entirely on all fours with this case. Barton concerned a Franks hearing. This wasn't a Franks hearing in this case. And even if it had been, Special Agent Price was not the affiant in support of the search warrant for this property. So there's some factual differences between Barton and this case. Well, but as you noted, I mean, it hasn't been fully briefed. I mean, maybe this isn't the case for the panel to delve into, you know, Ruiz's effect on prior Ninth Circuit precedent. I don't know. Do you have a response to that? I think that's probably correct, Your Honor. I think we chose not to brief this issue for a reason because we were comfortable addressing this on the merits. I think in a potential future case, there is certainly at least arguable tension between Ruiz and Barton and the cases that preceded Ruiz. But given that we have not raised that issue in our briefs in this case, we are comfortable proceeding to the merits and addressing why. It was not raised in the district court either, was it? That's correct. We did not raise it in the district court or in this court. That's correct. So I'd like to turn to why this court can have confidence in the verdict, specifically with respect to Count 5. The defendant acknowledged possession of the firearm in both his written plea agreement and in the plea colloquy. My friend on the other side says that the defendant only acknowledged that the firearm was found among his possessions. That's not correct. If you look at Excerpt to Record 100, which is the part of the written plea agreement, it states that Defendant Floyd Harshman's belongings in the Atco building included six ounces of processed marijuana, a Lama Super Comanche .44 Magnum caliber revolver with ammunition for it, located within approximately five feet of a single bed. Later on in the written plea agreement, the defendant agreed to forfeit that firearm. So you have the admission that his belongings included the firearm in the written plea agreement. Later on in the plea colloquy, he acknowledges three times his possession of the .44 caliber revolver. First, when reviewing the elements of Count 5, the district court, and this is at Excerpt to Record 126, says they have to prove that you knowingly possessed or carried the .44 Magnum caliber revolver during and in relation to those crimes. The defendant asks, meaning it was intended for use to defend or, and the court says, defend or protect the operation. And the defendant says, yeah, I understand. Second, when the court is reviewing the forfeiture allegation, and this is at Excerpt to Record 154, the court lists all of the items that are subject to forfeiture, including the .44 caliber revolver, and says, do you acknowledge and admit forfeiture of all those items? Not a problem, Your Honor. Yes. Third and finally, and I think most importantly during the government's recitation of the facts, at Excerpt to Record 158, the prosecutor says, a Super Comanche .44 Magnum revolver, and ammunition for it, all of which were within about five feet of his bed. He continues on Excerpt to Record 159. He, the defendant, was residing in the actual building and had his belongings there, and those belongings included the .44 Magnum revolver. We would also show that even though he claimed that the firearm was possessed for protection against bears, it was also possessed to protect the grow and in furtherance of the marijuana grow operation. The prosecutor finishes his recitation of the facts and the court asks at Excerpt to Record 164, all right, sir, did you hear everything that was just said? The defendant says, yes. The court asks, is it true? The defendant says again, yes. So it's not just that the defendant admitted that the firearm was found among his belongings in the actual building. He admitted that he possessed that firearm. At no point during the change of plea hearing, or any plea negotiations, did the defendant say or do anything to indicate that he did not possess the revolver. And we know from Blackledge v. Allison. Counsel, could I interrupt for a minute? I just, your time is running out and I want to make sure I get to this part because I didn't understand it. Paige, you're referring to ER 100, and of course the same judge had the plea agreement and then did this, I think opposing counsel is correct, there's this unusual request for supplemental briefing and supplemental briefing. But what we're reading from or referring to, of course, was all in the record before, you know, at the time that supplemental briefing was requested. So it's a little bit curious and it's always hard to unwind, you know. But here we are. And so on ER 99, for starters, it says that the defendant knowingly used or carried the Lama Super Comanche 44 Magnum as you just indicated. There's square brackets and it says or alternatively that he possessed the same gun. And I'm trying to figure out whether, I don't think this is a draft, is it? This looks like this was the executed agreement. Were there any changes made or? Do you know whether there's a square bracket that says alternatively? Yes, your honor, I believe that's correct. This is the executed agreement. So, okay. So there's just that, that's just in there. Maybe that was a negotiation point or something. But at any rate, it looks like this is executed. So it's agreed to one or the other of those provisions. Yes. And now I think you're just reading from the oral transcript of what happened when the plea was actually taken. Is that right? Correct, your honor, from the plea column.  Okay, so then that's how I read the record too. So then can you explain to me in case I'm missing something? There is this sequence where the judge asked for more briefing and more briefing. Could you explain that? I think the district court simply wanted to build as complete a record as possible. This had gone on a number of years earlier and the district court may not have been intimately familiar with the facts after that passage of time. The defendant was almost, he was close to getting out of prison at the time this issue actually came up. So it had been quite a few years. And I think the district court just wanted to build as complete a record as possible in anticipation of appellate review. But I don't think his request for supplemental briefing in any way undermines the plain language of the written plea agreement or what was in the plea colloquy itself. I think what the defendant said during those interactions is subject to a heavy measure of deference. And he has a high burden to show that his statements under oath and on the record were false. And in those statements, he admitted to possession of the firearm. And the government also. Forgive me, go ahead. I was going to turn to my next point, which was the other evidence that the government had in support of the verdict on count five. Three independent witnesses. Before you do that, there's one other procedural part, just to make sure I understand the sequence of events, please. I always wonder when we have a Brady allegation, how did this ever come out? Right, the problem is that there wasn't disclosure. And it seems if I'm reading these tea leaves correctly and understanding the record that agent price actually visited in jail and explained to Mr. Harshman, hey, you need to there's something that wasn't produced to you. And then there was a FOIA request. I'm summarizing. But have I got that right? That is my understanding as well, Your Honor. Yes. OK. Thank you all. So with respect to the other witnesses that Mr. Bigelow mentioned, three witnesses, Amanda Osborne, Nathaniel Harshman and Jonathan Butterfield, all indicated that the defendant possessed that firearm. Nathaniel and Amanda indicated that they had seen the defendant with it prior to that. My friend on the other side says that they never indicated where the firearm was possessed. That's not true. If you look at excerpt of record five forty nine states that Osborne stated she knew Everett Harshman had a revolver in his structure because Everett Harshman showed it to her approximately one month. So there is a statement from at least Amanda indicating that she had seen the revolver or knew that it was in that particular Atco trailer. I would also point out it's important to understand the context and scope of the suppression hearing. It was actually before the district court. The defendant never moved to suppress the search of the Atco trailer. He never moved to suppress the firearm that came from that trailer. The only thing that was at issue in the suppression hearing was the statement made to Special Agent Price. Even if the statement is excised from the record, you still have a valid search of the Atco trailer. You still have the firearm coming out of that trailer and you have an undisputed finding of guilt as to the other three counts in the case that the defendant was running a marijuana grow operation at that location. So given that it was undisputed, the firearm came from his trailer. The evidence was always going to come in and the government always had a strong case specifically with respect to count five. I see that my time has expired. So unless there are any further questions from the panel, I would simply ask you to affirm the district court's denial of the defendant's 2255 motion. Thank you, counsel. It appears that there are no further questions. Rebuttal. Yeah. A reasonable lawyer faced with a situation like this, if he had the Brady material prior to the suppression motion, would really have gone on after whether that particular weapon had been planted or not planted by price. He might have made some hay with that. Who knows? That's part of the prejudice. He didn't have the weapon. He didn't have the opportunity to make that argument. Counsel opposing counsel says that the evidence was not material because no reasonable defendant would have refrained from entering into the guilty plea. What is your response to that argument? I disagree with that. I don't know how many reasonable defendants counsel has represented. Or that I've represented, to be honest with you. Why is that argument not persuasive? Because we don't know what would have happened had he had that information. We don't know what turn of events might have transpired. But that's not the test. The test is whether, objectively, a reasonable defendant would have refrained from entering into the guilty plea if that information had been known. A reasonable defendant who didn't care about guns. Your Honor, I apologize. There are too many variables to determine whether a reasonable defendant would have entered a guilty plea had he had all of the information. And I'm not really... I apologize. I can't answer that question. I do apologize. I think that's the question we have to answer in determining whether or not the information, whether or not it was reversible error for that information not to be compelled. The question I don't... Would the outcome have been different? Is it reasonable to believe that the outcome of the proceedings would have been different? And the answer to that is yes, it would. Well, the outcome of the proceedings in this case was a guilty plea. That's correct. But would there have been a guilty plea had his due process rights not been denied? That's the question. That is the question. But due process does not necessarily mean the entry or non-entry of a guilty plea. It means that he's got the wherewithal, he's got the means, he's got the information to make a reasonable decision. Now, he may well have decided on the gun. I mean, to go to trial on the gun issue itself and argue Price's credibility. That's not an unreasonable argument. He got dinged 60 months by pleading guilty. Would it have been any different? Would the judge have done any differently? Had he gone to trial and lost and argued that Price was full of it and had planted the gun? That's a reasonable argument for a reasonable attorney to make. And it's not unreasonable for a defendant to throw the dice and say, yeah, I think I'm going to do that. Let's go to trial and see what happens. All right. All right, counsel. Could you wrap up, please? You've exceeded your time. I'm done. And I appreciate the court's attention. And thank you very much for the court's interest. I appreciate it. All right. Thank you, counsel. Thank you. Thank you.
judges: Rawlinson, Christen, R. Nelson